## Claypool v. Wigmore.

[No. 4,704. Filed June 22, 1904. Rehearing denied November 15, 1904.]

1. Negligence.—*Proximate Cause.*—A proximate cause is one which in natural and continuous sequence, unbroken by efficient, intervening cause, produced the result complained of and without which the result would not have occurred. p. 39.

2. Same.—*Proximate Cause.*—*Intervening Act of Third Party.*—If the defendant does an act which might naturally produce an injury as its consequence, but before any such injury results, a third party does some act, or omits to do some act which it was his duty to perform, and such act or omission of such third party is the immediate cause of the injury complained of, such third party is liable, but not such defendant. p. 40.

3. Same.—*Proximate Cause.*—Where it was shown that the defendant was negligent in the first instance, but that the injury complained of would not have resulted from such negligence, and that the negli-

gent act of an independent, responsible and intervening agent was the direct and proximate cause of the injury complained of, such defendant is not liable. p. 40.

4. NEGLIGENCE.—*Interrogatories.*—*Injuries by Elevator.*—Where, in an action for damages for personal injuries, the answers to the interrogatories show: that the plaintiff, a lady, entered defendant's building accompanied by a gentleman; that her business required her to go to an upper floor; that the hall to the elevator was adequately lighted; the grating enclosing the elevator was easily and clearly seen upon entering the outer door; the shaft looked different when the cage was there and when not there; the door of the shaft was open about eight inches; her companion opened the door and she walked into the shaft without heeding whether the cage was there or not; if she had looked carefully she could have seen there was no cage there; she had used this elevator many times; she knew it was operated by a man; knew that such operator let people in and out, and that the door was opened from the inside, and that her companion was not the operator of the elevator; if she had looked she could have seen there was neither a cage nor a man inside the shaft; the cage and man were visible whether the door of the shaft was open or shut; neither the operator nor any of defendant's employes threw open the door for plaintiff to enter; her companion did so without authority from defendant; she did not pause on reaching the shaft but walked right in; the floor and hallway leading to shaft were light in color; the door of shaft was a sliding one twenty-six inches wide, the catch being on the inside; the door was thrown wide open when the cage was at the floor; the light gave a clear view of the elevator, such answers are fatal to plaintiff's right of recovery. p. 44.

Appeal from Superior Court of Marion County (62,498); *Vinson Carter,* Judge.

Action by Lida Wigmore against Edward F. Claypool for damages for personal injuries. From a judgment for plaintiff, defendant appeals. *Reversed.*

*E. E. Stevenson* and *E. H. Knight,* for appellant.
*J. W. Holtzman* and *H. N. Spaan,* for appellee.

WILEY, J.—Appellee was plaintiff below and recovered a judgment against appellant for $4,000 on account of personal injuries sustained by her, resulting from the imputed negligence of appellant. Her injuries were occasioned by falling down an elevator shaft from the ground floor to the

basement, in a building owned by appellant; and the specific negligence charged was in leaving the elevator door open, and that the entrance leading from the front door of the building to the elevator shaft was not properly lighted.

Several errors were assigned, but the one which challenges the overruling of appellant's motion for judgment on answers to interrogatories notwithstanding the general verdict is the only one necessary to consider, for the facts thus found affirmatively show that appellee is without legal redress against appellant.

The facts upon which the respective rights of the parties must be determined, as exhibited by the answers to interrogatories, may properly be stated in narrative form as follows: The hallway where the elevator shaft was located was adequately lighted. The day on which appellee was injured was clear. The elevator shaft and grating enclosing it were clearly and easily seen upon entering the outer door. The elevator shaft looked different to one approaching the open door when the cage was there and when it was not there. When appellee entered the building the door of the elevator shaft was open about eight inches. She was in company with a gentleman by the name of Wallsmith, and he opened the door of the shaft so she could enter. When Wallsmith opened the door, appellee walked right into the open shaft, without heeding whether the cage was there or not. The floor of the elevator cage was about three feet five inches by six feet six inches, and the floor was different in color from the elevator shaft leading to the basement. If appellee had looked carefully before stepping into the elevator shaft, she could have seen that the cage and elevator operator were not there. She had ridden on the elevator several times prior to the accident, and knew that the cage was operated by a man, who stood inside, and had observed that no one but this operator opened the door and let passengers in and out. The door of the cage was opened from the inside, except on the occasion of appellee's injury.

Mr. Wallsmith was not the operator of the elevator, was not an employe of appellant, and appellee knew said facts. If appellee had looked when she entered the building, she could have seen that the door of the elevator was closed, or nearly closed. The operator of the elevator, standing at his lever in the cage, was visible through the grating, even when the door was closed. Neither the operator, nor any other person in appellant's employ, threw open the door leading to the elevator shaft as appellee approached the shaft. Wallsmith opened the door without any authority from appellant so to do. Neither the appellee nor Wallsmith paused for any time just as they reached the elevator shaft. When they entered the building another person was waiting in the lobby, who could have been seen by appellee, if she had looked, and she did not look about her as she approached the elevator shaft. The floor and walls of the hallway leading to the elevator shaft were light in color. The door opening into the elevator shaft was a sliding one, and was twenty-six inches wide, and the catch on the door was on the inside. This door was thrown wide open and so left when the cage was at the floor. The light from the street was amply sufficient to reveal a clear view of the elevator grating and door. From the time appellee entered the building to the time she stepped into the elevator shaft, she did not stop. It was fifteen feet from the door where she entered to the elevator shaft, and she was familiar with the surroundings and location of the shaft. Appellee was in possession of good eyesight and hearing, and had used this elevator at least twenty-two times prior to the accident. The accident resulting in appellee's injury would not have happened had it not been for the negligence of Wallsmith in opening the cage door, and it would have been impossible for appellee to have fallen into the elevator shaft if the door leading thereto had been left as it was when she and Wallsmith entered the building. Her

action in stepping into the shaft was voluntary on her part. The operator of the elevator stood in the car just inside the door, and in plain view of one approaching the elevator from the front, when the door was open.

We must determine the rights of the respective parties upon the facts specially found, and keep in mind the fact that the building in which appellee was injured was a public place, where she was invited and had a right to be. From the view of the law which we have taken, as applied to the facts found, we do not deem it necessary to discuss or decide the question of appellant's negligence, as a principle of law is involved which absolves him from liability. While the facts in the first instance do not show that appellant's agent, or servant, left the door of the elevator shaft open a width of eight inches, yet, if it may be conceded that he did, that fact was not the proximate cause of the injury, for it is affirmatively found that if the door had been left in the condition it was when appellee reached it she could not have been injured.

1. The direct and proximate cause of her injury was the opening of the door by Wallsmith, with which act appellant was in nowise connected, and for which he was not responsible. A proximate cause is well defined in the following language: "A proximate cause may be defined as that cause which in natural and continuous sequence, unbroken by any efficient, intervening cause, produced the result complained of, and without which that result would not have occurred." 16 Am. and Eng. Ency. Law, p. 436. In the case of *Baltimore, etc., R. Co.* v. *State* (1870), 33 Md. 542, the supreme court of Maryland, defining "remote" and "proximate" cause, said: "By 'proximate cause' is intended an act which directly produced, or concurred directly in producing, the injury. By 'remote cause' is intended that which may have happened, and yet no injury have occurred, notwithstanding that no injury could

have occurred, if it had not happened." The "proximate cause" must, as a legal sequence, be that from which something directly results.

2. The rule is well stated by the supreme court of West Virginia in the case of *Washington v. Baltimore, etc., R. Co.* (1880), 17 W. Va. 190, where the court says, on page 196: "The act or omission, which constitutes negligence, must be such as directly produces as its natural consequence an injury to another. And therefore if a party do an act, which might naturally produce an injury to another as its consequence, but, before any such injury results, a third person does some act or omits to perform some act, which it was his duty to perform, and this act or omission of such third person is the immediate cause of an injury, which would not have occurred but for his negligence, such third person is responsible for such injury and not the party guilty of the first negligence; for the causal connection between the first act of negligence and the injury is broken by the interposition of the act or omission of the third party. And this act or omission of the third party is in law regarded as the cause of the injury, and the act of the first party is in law regarded as a mere condition, according to the maxim: *'In jure non remota causa sed proxima spectatur.'* " The law looks to the proximate, and not the remote cause. We think the proximate cause which leads to a result must be regarded and understood to be that which, in a natural and continuous sequence, unbroken by any new or other cause, produces the result.

3. If it be conceded that the facts show that appellant was negligent in the first instance, they in like manner show, and it is so conceded, that appellee's injury would not have resulted from such negligence, but was the direct and proximate result of the negligent act of an independent, responsible and intervening agency. In such case it has many times been ruled that the party guilty of negligence in the first instance is not liable. This doctrine is

firmly established by numerous authorities, some of which we cite: *Malloy* v. *New York Real Estate Assn.* (1898), 156 N. Y. 205, 50 N. E. 853, 41 L. R. A. 487; *McGahan* v. *Indianapolis Nat. Gas Co.* (1895), 140 Ind. 335, 29 L. R. A. 355, 49 Am. St. 199; *Alexander* v. *Town of New. Castle* (1888), 115 Ind. 51; *White Sewing Machine Co.* v. *Richter* (1891), 2 Ind. App. 331; *New York, etc., R. Co.* v. *Perriguey* (1894), 138 Ind. 414; *Milwaukee, etc., R. Co.* v. *Kellogg* (1876), 94 U. S. 469, 24 L. Ed. 256; *Oil Creek, etc., R. Co.* v. *Keighron* (1873), 74 Pa. St. 316, 320; Wharton, Negligence (2d ed), §§73, 134; *Pennsylvania Co.* v. *Whitlock* (1884), 99 Ind. 16, 50 Am. Rep. 71; Ray, Neg. of Imp. Duties (Passenger), pp. 669, 670; *Kistner* v. *City of Indianapolis* (1885), 100 Ind. 210.

It can not be successfully denied that Wallsmith was an intervening, responsible agent. It was his act which was directly responsible for appellee's injury, without which her injury could not have occurred; for, as was said in *Washington* v. *Baltimore, etc., R. Co., supra:* "The law never looks to the remote cause, which we have called a condition, but only to the proximate cause."

In *McGahan* v. *Indianapolis Nat. Gas Co., supra,* the court said: "The rule that an intervening responsible agent cuts off the line of causation from the original negligence has been many times recognized by this court." See, also, *New York, etc., R. Co.* v. *Perriguey, supra; Alexander* v. *Town of New Castle, supra; Terre Haute, etc., R. Co.* v. *Buck* (1884), 96 Ind. 346, 49 Am. Rep. 168; *Billman* v. *Indianapolis, etc., R. Co.* (1881), 76 Ind. 166, 40 Am. Rep. 230. Lord Bacon in his Maxims, Reg. 1, says: "It were infinite for the law to judge the causes of causes, and their impulsions one of another, therefore it contenteth itself with the immediate cause, and judgeth of acts by that, without looking to any further degree."

In *Lewis* v. *Flint, etc., R. Co.* (1884), 54 Mich. 55, 19 N. W. 744, 52 Am. Rep. 790, Judge Cooley said: "As

between the causes which precede the proximate cause, the law can not select one rather than any other as that to which the final consequence shall be attributed, and it stops at the proximate cause, because to go back of it would be to enter upon an investigation which would be both endless and useless." Our Supreme Court approved this language in *New York, etc., R. Co.* v. *Perriguey, supra.*

Judge Ray uses the following language: "Where the concurring cause is the independent, wrongful act of a responsible person, such act arrests causation, being regarded as the proximate cause of the injury, the original negligence being considered merely as its remote cause. As, in the law, it is the proximate and not the remote cause which is regarded, he who is guilty of the original negligence is not chargeable, but redress must be sought from him who directly caused the injury. * * * In civil cases, a defendant is not responsible for results, except such as are natural, proximate and direct, if such consequences are caused by the acts of others, so operating on his act as to produce the injurious consequences then he is not liable." Ray, Neg. of Imp. Duties (Passenger), pp. 669, 670. These various statements of the rule are fortified by many authorities, and, without citing them here, we refer to those collected by Judge Ray, following the text above quoted.

To support appellee's contention that upon the facts found the law imposes a liability upon appellant, counsel have cited a number of authorities, two of which are the following: *Rhodius* v. *Johnson* (1900), 24 Ind. App. 401, and *Brosnan* v. *Sweetser* (1890), 127 Ind. 1. Neither of those cases is of controlling authority here, and they are readily distinguishable from the case we are considering. In the former case, appellee had gone to a building owned by appellant, and was invited to a clubroom where refreshments were served. She was unfamiliar with the premises, and passed into a hallway which was dimly lighted. In

that hallway there were three doors of similar character, one of which was partly ajar. It was not a sliding door, and there were no appearances of its leading to an elevator shaft. She was not looking for an elevator, nor intending to take passage on one, but was looking for the clubroom she was seeking. Into this doorway, the door of which was partly open, she passed, and instead of finding a floor on a level with the one in the hallway, the door opened into an elevator shaft, into which she fell and was injured. This court held she could recover. In that case it will be observed that the proximate cause of the injury was appellant's negligence in leaving the door leading to a dangerous pitfall open, without any warning or protection. There was not any intervening, independent agency.

In the Brosnan case, appellee fell into a trapdoor in appellant's business house, where she had gone to make some purchases. The trapdoor was on a main floor, where she was invited and had a right to be. In passing through appellant's store from the front to the rear in search of the article she wanted, she passed over the door, which was then closed. Desiring a different grade of article than that shown her, she was directed to go to the front of the store. In the meantime the trapdoor was opened, and left open, and as she passed to the front she stepped into the opening and was injured. From this brief statement of the facts, it will be seen that that case and the one at bar are not parallel.

We do not think it necessary to review other cases cited by counsel, for, as we regard them, they are not in point.

Counsel for appellant insist that the facts specially found show that appellee was guilty of contributory negligence, and hence not entitled to recover, and have supported their insistence by an able argument and many authorities. As our consideration of another branch of the case, as herein expressed, has led us to the conclusion that appellant

is not liable, under the facts exhibited by the record, we deem it wholly unnecessary to decide whether or not appellee was guilty of contributory negligence.

4. In this case facts are elicited by the answers of the jury to interrogatories, which are fatal to appellee's right to recover. The facts thus established completely and effectually destroy appellee's cause of action, and hence appellant must succeed. *Korrady* v. *Lake Shore, etc., R. Co.,* (1892), 131 Ind. 261, 266.

We recognize the rule that where an injury might reasonably be anticipated from the negligent act of a party, notwithstanding the intervention of an independent agency, the act of such independent agency will not constitute a defense, for it will not be regarded as cutting off the line of causation, and the party guilty of the original act of negligence will be held responsible. But neither the evidence nor the facts specially found, as disclosed by the record before us, makes such a case.

Judgment reversed, and the trial court directed to sustain appellant's motion for judgment on the answers to interrogatories.